## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS ECCLESTON, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BROWN PAINDIRIS & SCOTT, LLP, <br><br> Defendant. | Case No. 25-510 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, THOMAS ECCLESTON ("Plaintiff"), on behalf of himself and all others similarly situated, states as follows for his class action complaint against Defendant, BROWN PAINDIRIS & SCOTT, LLP, ("BPS" or "Defendant"):

### INTRODUCTION

1.      Between November 7, 2023, and November 9, 2023., Defendant, a multi-practice law firm operating throughout Connecticut, lost control over its computer network and the highly sensitive personal information stored within in a data breach perpetrated by cybercriminals (the "Data Breach"). Upon information and belief, the Data Breach has impacted several thousands of Defendant's current and former clients.

2.      Following an internal investigation, Defendant learned cybercriminals had gained unauthorized access to its current and former clients' personally identifiable information ("PII"), including but not limited to full names, Social Security numbers, dates of birth, driver's license or State ID numbers, taxpayer ID numbers, financial account information, payment card numbers, and ("protected health information" or "PHI"), including medical Information and health insurance information. Plaintiff refers to both PII and PHI collectively as "Sensitive Information."

3.      On or around March 2025, over sixteen months later, Defendant finally began notifying Class Members about the Data Breach ("Breach Notice"). Defendant's Breach Notice sent to and received by Plaintiff is attached as **Exhibit A**.

4.      Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the Sensitive Information of Plaintiff, and failed to maintain reasonable security safeguards or protocols to protect the Class's Sensitive Information—rendering it an easy target for cybercriminals.

5.      Defendant's Breach Notice obfuscated the nature of the breach and the threat it posted—refusing to tell its current and former clients how many people were impacted, how the breach happened, or why Defendant delayed notifying victims that cybercriminals had gained access to their highly private information.

6.      Defendant's failure to timely report the Data Breach made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Sensitive Information.

7.      Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of misuse of the class's Sensitive Information.

8.      In failing to adequately protect its current and former clients' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated state law and harmed an unknown number of its current and former clients.

9.      Plaintiff and the Class are victims of Defendant's negligence and inadequate cyber

security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their Sensitive Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

10.    Plaintiff is a former client of Defendant and Data Breach victim.

11.    The exposure of one's Sensitive Information to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

## PARTIES

12.    Plaintiff Thomas Eccleston is a natural person and citizen of South Carolina, where he intends to remain.

13.    Defendant, Brown Paindiris & Scott, LLP, is a domestic limited liability partnership with its principal place of business located at 2252 Main Street, Glastonbury, Connecticut, 06033.

## JURISDICTION & VENUE

14.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Defendant are of different states. And there are over 100 putative Class members.

15.    This Court has personal jurisdiction over Defendant because it is headquartered in Connecticut, regularly conducts business in Connecticut, and has sufficient minimum contacts in Connecticut.

16.    Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

*Brown Paindiris & Scott, LLP*

17.     Defendant is a law firm that "offers top-notch representation across a wide range of practice areas" including criminal defense, divorce, personal injury and medical malpractice. It operates four offices throughout Connecticut.[1]

18.     On information and belief, Defendant accumulates highly private Sensitive Information of its current and former clients.

19.     In collecting and maintaining its clients' Sensitive Information, Defendant agreed it would safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Sensitive Information.

20.     Defendant understood the need to protect its current and former clients' Sensitive Information and prioritize its data security, declaring it its Privacy Policy:

> To prevent unauthorized access, maintain data accuracy, and ensure the correct use of information, we have put in place appropriate physical, electronic, and managerial procedures to safeguard and secure the information we collect. We ensure that all your private personal information is kept confidential and we prohibit the disclosure and publication of your private personal information, unless such disclosure is specifically allowed by law. We take reasonable precautions to restrict access to your private personal information.[2]

21.     Despite recognizing its duty to do so, on information and belief, Defendant has not implemented reasonably cybersecurity safeguards or policies to protect current and former clients' Sensitive Information or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to its current and former clients' Sensitive Information.

---

[1] *our firm*, BROWN PAINDIRIS & SCOTT, https://www.bpslawyers.com/our-firm/ (last visited Mar. 23, 2025).
[2] *privacy policy*, BROWN PAINDIRIS & SCOTT, https://www.bpslawyers.com/privacy-policy/ (last visited Mar. 23, 2025).

***Defendnant's Data Breach***

22.     Plaintiff is a former client of Defendant and a data breach victim.

23.     As a condition of obtaining legal services from Defendant, Plaintiff provided Defendant with his Sensitive Information, including but not limited to his name, Social Security number, dates of birth, driver's license, financial account information and medical information. Defendant used Plaintiff's Sensitive Information to provide services to Plaintiff and facilitate its operations.

24.     On information and belief, Defendant collects and maintains its current and former clients' unencrypted Sensitive Information in its computer systems.

25.     In collecting and maintaining its clients' Sensitive Information, Defendant implicitly agreed that it will safeguard the data using reasonable means according to state and federal law.

26.     According to Defendant's Breach Notice, Defendant was subject to a data breach between November 7, 2023, and November 9, 2023, when it experienced "a cybersecurity incident involving unauthorized access to [Defendant's] network."[3] Following an investigation, Defendant learned that "certain impacted files containing personal information may have been accessed and/or *acquired* by an unauthorized party."[4]

27.     BPS admitted that the Sensitive Information stolen included, at least, Plaintiff's and Class members' "full name, Social Security number, date of birth, driver's license or State ID number, taxpayer ID number, financial account information, payment card number, medical Information and health insurance information..."[5]

---

[3] Ex. A.
[4] *Id*.
[5] *Id*.

28.     Due to the obfuscating language in Defendant's Breach Notice, the extent of the cybercriminal's access to its systems is unknown.  It is also unknown how many of Defendant's current and former clients were impacted or how the unauthorized actor was able to infiltrate Defendant's computer network.

29.     Through its inadequate security practices, Defendant exposed Plaintiff's and the Class's Sensitive Information for theft and sale on the dark web.

30.     Despite its duties to safeguard Sensitive Information, Defendant did not in fact follow industry standard practices in securing its current and former clients' Sensitive Information, as evidenced by the Data Breach.

31.     And yet, Defendant waited until March 14, 2025 before it began notifying the Class—*464 days* after the Data Breach occurred and one month after Defendant stated its "thorough investigation" the Data Breach was completed.[6]

32.     Thus, Defendant kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

33.     And when Defendant did notify Plaintiff and the Class of the Data Breach, it acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, warning Plaintiff and Class members to "remain vigilant in reviewing your financial account statements and credit reports for fraudulent or irregular activity."[7]

34.     BPS further advised Plaintiff and Class members to take certain precautionary measures, such as "placing a fraud alert and/or security freeze on credit files and/or obtaining a free credit report."[8]

---

[6] *Id.*
[7] *Id.*
[8] *Id.*

35.     In response to the Data Breach, Defendant contends that it will "enhance the security and privacy of your personal information."[9]

36.     But this is too little too late. Simply put, these measures—which Defendant now recognizes as necessary—should have been implemented *before* the Data Breach.

37.     Moreover, Defendant has not explained what "enhancing security measures" actually means. Thus, upon information and belief, Plaintiff's and Class Members' Sensitive Information remains unsecure.

38.     Defendant has done little to remedy its Data Breach. True, Defendant has offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class members for the injuries that Defendant inflicted upon them.

39.     Indeed, even with credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' Sensitive Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

40.     After stealing Sensitive Information as in the case here, Ransomware groups often post links to stolen data on a Data Leak Site ("DLS").[10] A DLS is a "website where the illicitly retrieved data of companies, that refuse to pay the ransom, are published."[11]

41.     However, even if a ransomware group removes stolen data from its DLS when a ransom is paid, there is no guarantee that the data will be deleted.[12] The stolen Sensitive Information is valuable, and can easily be sold to another threat actor, so there is little incentive to

---

[9] *Id*.

[10] Steve Adler, *Majority of Ransomware Victims That Pay a Ransom Suffer a Second Attack*, HIPAA JOURNAL (Feb. 23, 2024), https://www.hipaajournal.com/majority-of-ransomware-victims-that-pay-a-ransom-suffer-a-second-attack/#:~:text=While%20ransomware%20groups%20usually%20remove,little%20incentive%20to%20delete%20it.

[11]     *Dedicated Leak Sites (DLS): Here's what you should know*, GROUP-IB, https://www.group-ib.com/resources/knowledge-hub/dedicated-leak-sites/ (last visited Feb. 5, 2025).

[12] n. 15.

delete it.[13]

42.    Ransomware groups can therefore monetize stolen Sensitive Information and sell it on the dark web as part of a full identity profile.[14] Buyers can then use that information to conduct different types of identity theft or fraud, such as to file a fake tax return, to apply for a fraudulent mortgage or to open a bank account while impersonating the victim.[15]

43.    Furthermore, cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

44.    On information and belief, Defendant failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its current and former clients' Sensitive Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Information.

***Defendant's Pattern of Negligent Data Security***

19.    Stunningly, this Data Breach is only part and parcel of defendant's *pattern* of negligent data security. This Data Breach appears to be the second data security incident, or the subsequent discovery of stolen Sensitive Information related to the same data security incident, that Defendant has experienced since November 2023.[16]

---

[13] *Id.*
[14] Anthony M. Freed, *Which Data Do Ransomware Attackers Target for Double Extortion?*, MALICIOUSLIFE BY CYBEREASON, https://www.cybereason.com/blog/which-data-do-ransomware-attackers-target-for-double-extortion (listed visited Mar. 6, 2025).
[15] *Id.*
[16] *Data Breach Notifications*, MAINE ATTORNEY GENERAL, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/list.html (last visited Mar. 23, 2025).

20.    On March 18, 2024, Defendant reported to the Maine Attorney General[17] that it had experienced a data breach occurring from November 7, 2023 to November 9, 2023, the same dates that Defendant reported this Data Breach occurred, nearly one year later.[18]

21.    Due to the obfuscating language in Defendant's Breach Notice, it is unclear whether Defendant experienced two distinct breaches in November 2023 or whether Defendant's "thorough investigation" did not reveal that some of its current and former clients' were affected by the Data Breach until one year after the investigation allegedly was conducted.

22.    Either way, such conduct demonstrates that Defendant has not implemented the "significant measures to protect your information" it promised in its Breach Notice.[19]

***The Data Breach was a Foreseeable Risk of Which Defendant was on Notice.***

45.    It is well known that Sensitive Information, including Social Security numbers, is an invaluable commodity and a frequent target of hackers.

46.    In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[20]

47.    In light of recent high profile data breaches, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

48.    Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service

---

[17] *Id.*

[18] *Data Breach Notifications*, MAINE ATTORNEY GENERAL, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/a2bda19b-436f-4fc6-991c-dcb3e81293ba.html (last visited Mar. 23, 2025).

[19] Ex. A.

[20] Data breaches break record in 2021, CNET (Jan. 24, 2022), https://www.cnet.com/news/privacy/record-number-of-data-breaches-reported-in-2021-new-report-says/ (last accessed September 4, 2023).

have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

49.     Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep Sensitive Information private and secure, Defendant failed to take appropriate steps to protect the Sensitive Information of Plaintiff and Class Members from being compromised.

50.     In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks, including ransomware attacks involving data theft, because warnings were readily available and accessible via the internet.

51.     In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[21]

52.     In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[22]

---

[21]     *High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations*, FBI, https://www.ic3.gov/PSA/2019/PSA191002 (last visited Mar. 23, 2025).
[22]     Catalin Cimpanu *Ransomware mentioned in 1,000+ SEC filings over the past year*, ZDNET (Apr. 30, 2020), https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/.

53.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[23]

54.     This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included threatening to release stolen data.

55.     In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the unencrypted Sensitive Information of thousands of its current and former clients in an Internet-accessible environment, had reason to be on guard for the exfiltration of the Sensitive Information and Defendant's type of business had cause to be particularly on guard against such an attack.

56.     Before the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' Sensitive Information could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

57.     Prior to the Data Breach, Defendant knew or should have known that it should have encrypted its current and former clients' Social Security numbers and other sensitive data elements

---

[23] *Stop Ransomware Guide*, U.S. CISA, https://www.cisa.gov/stopransomware/ransomware-guide (last visited Mar. 23, 2025).

to protect against their publication and misuse in the event of a cyberattack.

***Plaintiff's Experience and Injuries***

58.     Plaintiff is a former client of Defendant and a data breach victim.

59.     As a condition of receiving legal services from Defendant, Plaintiff provided Defendant with his Sensitive Information, including but not limited to his full name, Social Security number, date of birth, driver's license or State ID number, taxpayer ID number, financial account information, payment card number, medical information and health insurance information.[24] Defendant used that Sensitive Information to facilitate its operations and required Plaintiff to provide that Sensitive Information.

60.     Plaintiff provided his Sensitive Information to Defendant and trusted that BPS would use reasonable measures to protect it according to state and federal law.

61.     On information and belief, Plaintiff's Sensitive Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

62.     Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to promptly notify him about the Data Breach.

63.     As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's Sensitive Information for theft by cybercriminals and sale on the dark web.

64.     Importantly, Plaintiff does not recall ever learning that his Sensitive Information was compromised in a data breach incident, other than the breach at issue in this case.

65.     Plaintiff suffered actual injury by way of attempted identity theft and fraud. In the aftermath of the Data Breach, Plaintiff has received notifications that an unknown individual was attempting to complete transactions using Chime card in his name.

---

[24] *See* Ex. A.

66.     Plaintiff suffered additional actual injury from the exposure of his Sensitive Information —which violates his rights to privacy.

67.     Plaintiff suffered further actual injury in the form of damages to and diminution in the value of his Sensitive Information. After all, Sensitive Information is a form of intangible property—property that Defendant was required to adequately protect.

68.     As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, and changing his online account passwords, and monitoring his credit information.

69.     Plaintiff has already spent and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. Plaintiff is experiencing anxiety, distress, and fear regarding how this Data Breach, including the exposure and loss of his Social Security number, will impact his ability to do so. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

70.     Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his Sensitive Information being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's failure to inform Plaintiff about the Data Breach in a timely fashion.

71.     Once an individual's Sensitive Information is for sale and access on the dark web,

as Plaintiff's Sensitive Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[25] On information and belief, the spam calls Plaintiff is experiencing is a result of the Data Breach.

72.    Plaintiff has a continuing interest in ensuring that his Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

73.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendant.

74.    As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

   a.   The loss of the opportunity to control how their Sensitive Information is used;

   b.   The diminution in value of their Sensitive Information;

   c.   The compromise and continuing publication of their Sensitive Information;

   d.   Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

   e.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and

---

[25] Ryan Toohil, *What do Hackers do with Stolen Information?*, AURA (Sept. 5, 2023), https://www.aura.com/learn/what-do-hackers-do-with-stolen-information.

                fraud;

    f.    Delay in receipt of tax refund monies;

    g.    Unauthorized use of stolen Sensitive Information; and

    h.    The continued risk to their Sensitive Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Sensitive Information in its possession.

75.    Stolen Sensitive Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

76.    The value of Plaintiff's and the proposed Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

77.    Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

78.    It can take victims years to spot identity or Sensitive Information theft, giving criminals plenty of time to use that information for cash.

79.    One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

80.    Cyber-criminals can cross-reference two sources of Sensitive Information to marry

unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

81.     The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's stolen Sensitive Information is being misused, and that such misuse is fairly traceable to the Data Breach.

82.     Defendant disclosed the Sensitive Information of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Sensitive Information of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Sensitive Information.

83.     Defendant's failure to properly notify Plaintiff and the Class of the Data Breach exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest ability to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

*Defendant failed to adhere to FTC guidelines*

84.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Sensitive Information.

85.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

    a.  protect the personal customer information that they keep;

    b.  properly dispose of personal information that is no longer needed;

    c.  encrypt information stored on computer networks;

    d.  understand their network's vulnerabilities; and

    e.  implement policies to correct security problems.

86.     The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

87.     The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

88.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15

U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

89.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to its current and former clients' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

90.    Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

91.    Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

92.    Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

93.    These frameworks are applicable and accepted industry standards. And by failing

to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

94.     Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All **indiv**iduals residing in the United States whose Sensitive Information **was compromised in Defendant's Data Breach, including all those who received notice of the Data Breach.**

95.     Excluded from the Class is Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant have a controlling interest, any of Defendant's officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

96.     Plaintiff reserves the right to amend the class definition.

97.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

     a.   **Numerosity**. Plaintiff is representative of the Class, consisting of several thousand members, far too many to join in a single action;

     b.   **Ascertainability**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control;

     c.   **Typicality**. Plaintiff's claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

     d.   **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. His interests do not conflict with the Class's interests, and he has retained

counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

     i.  Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Sensitive Information;

     ii.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

     iii.  Whether Defendant were negligent in maintaining, protecting, and securing Sensitive Information;

     iv.  Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's Sensitive Information

     v.  Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

     vi.  Whether Defendant's Breach Notice was reasonable;

     vii.  Whether the Data Breach caused Plaintiff's and the Class's injuries;

     viii.  What the proper damages measure is; and

     ix.  Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

98.    Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to

    fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**FIRST CLAIM FOR RELIEF**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

99. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

100. Plaintiff and the Class entrusted their Sensitive Information to Defendant on the premise and with the understanding that Defendant would safeguard their Sensitive Information, use their Sensitive Information for business purposes only, and/or not disclose their Sensitive Information to unauthorized third parties.

101. Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their Sensitive Information in a data breach. And here, that foreseeable danger came to pass.

102. Defendant has full knowledge of the sensitivity of the Sensitive Information and the types of harm that Plaintiff and the Class could and would suffer if their Sensitive Information was wrongfully disclosed.

103. Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff and Class Members' Sensitive Information.

104. Defendant owed—to Plaintiff and Class Members—at least the following duties to:

a.   exercise reasonable care in handling and using the Sensitive Information in its care and custody;

    b.   implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

    c.   promptly detect attempts at unauthorized access;

    d.   notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their Sensitive Information.

105.    Also, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

106.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove Sensitive Information it was no longer required to retain under applicable regulations.

107.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Sensitive Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

108.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Sensitive Information, a necessary part of obtaining services from Defendant.

109.    The risk that unauthorized persons would attempt to gain access to the Sensitive

Information and misuse it was foreseeable. Given that Defendant hold vast amounts of Sensitive Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Sensitive Information—whether by malware or otherwise.

110.    Sensitive Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

111.    Defendant improperly and inadequately safeguarded the Sensitive Information of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

112.    Defendant breached these duties as evidenced by the Data Breach.

113.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff and Class Members' Sensitive Information by:

    a.  disclosing and providing access to this information to third parties and

    b.  failing to properly supervise both the way the Sensitive Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

114.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Sensitive Information of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury.

115.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact.

116.    Defendant has admitted that the Sensitive Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

117.    As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

118.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

### SECOND CLAIM FOR RELIEF
### Negligence *per se*
### (On Behalf of Plaintiff and the Class)

119.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

120.    Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff and Class Members' Sensitive Information.

121.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Sensitive Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the

basis of Defendant's duty to protect Plaintiff and the Class Members' sensitive Sensitive Information.

122.   Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

123.   Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

124.   The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

125.   But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

126.   The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Information.

127.   Defendant's various violations and its failure to comply with applicable laws and

regulations constitutes negligence *per se*.

128.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

### THIRD CLAIM FOR RELIEF
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

129.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

130.    Plaintiff and the Class delivered their Sensitive Information to Defendant as part of obtaining the services provided by Defendant.

131.    In turn, Defendant agreed it would not disclose the Sensitive Information it collects to unauthorized persons. Defendant also promised to safeguard its current and former clients' Sensitive Information.

132.    Plaintiff and the members of the Class accepted Defendant's offer by providing Sensitive Information to Defendant and payments to Defendant for legal services.

133.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their Sensitive Information.

134.    Plaintiff and the members of the Class would not have entrusted their Sensitive Information to Defendant in the absence of such an agreement with Defendant.

135.    Defendant materially breached the contracts it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiff and members of the Class by:

     a.    Failing to properly safeguard and protect Plaintiff's and members of the Class's Sensitive Information;

b.   Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

c.   Failing to ensure the confidentiality and integrity of electronic Sensitive Information that Defendant created, received, maintained, and transmitted.

136.   The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

137.   Plaintiff and members of the Class have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

138.   The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

139.   Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

140.   Defendant failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

141.   In these and other ways, Defendant violated its duty of good faith and fair dealing.

142.   Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith

and fair dealing.

143.    Plaintiff, on behalf of himself and the Class, seeks compensatory damages for breach of implied contract, which includes the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

<div align="center">

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the Plaintiff and the Class)**

</div>

144.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

145.    This claim is plead in the alternative to the breach of implied contractual duty claim.

146.    Plaintiff and members of the Class conferred a benefit upon Defendant in providing Sensitive Information to Defendant.

147.    Defendant also benefited from the receipt of Plaintiff's and the Class's Sensitive Information, as this was used to facilitate its business operations.

148.    Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and members of the Class.

149.    Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the proposed Class's services and their Sensitive Information because Defendant failed to adequately protect their Sensitive Information. Plaintiff and the proposed Class would not have provided their Sensitive Information or obtained services from Defendant at the pay rate they did had they known Defendant would not adequately protect their Sensitive Information.

150.    Defendant should be compelled to disgorge into a common fund to benefit Plaintiff and members of the Class all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged here.

## FIFTH CLAIM FOR RELIEF
### Invasion of Privacy
### (On Behalf of the Plaintiff and the Class)

151.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

152.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Sensitive Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

153.    Defendant owed a duty to its current and former clients, including Plaintiff and the Class, to keep this information confidential.

154.    The unauthorized theft by a third party of Plaintiff's and Class Members' Sensitive Information is highly offensive to a reasonable person.

155.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant as part of receiving legal services, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

156.    The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

157.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

158.    Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

159.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

160.    As a proximate result of Defendant's acts and omissions, the Sensitive Information of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

161.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class because their Sensitive Information is still maintained by Defendant with its inadequate cybersecurity system and policies.

162.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Sensitive Information of Plaintiff and the Class.

163.    In addition to injunctive relief, Plaintiff, on behalf of himself and the other members of the Class, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

### SIXTH CLAIM FOR RELIEF
**Breach of Fiduciary Duty**
**(On Behalf of the Plaintiff and the Class)**

164.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

165.    Given the relationship between Defendant and Plaintiff and Class members, that between attorney and client, Defendant became a fiduciary by its undertaking to represent Plaintiff and maintain his Sensitive Information confidential, and, on behalf of Plaintiff and Class members, to: (1) safeguarding of Plaintiff's and Class members' Sensitive Information; (2) to timely notify

Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

166.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendant's relationship with them—especially to secure their Sensitive Information.

167.    Because of the highly sensitive nature of the Sensitive Information involved here, Plaintiff and Class members would not have entrusted Defendant, or anyone in Defendant's position, to retain their Sensitive Information had they known the reality of Defendant's inadequate data security practices.

168.    Defendant breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' Sensitive Information.

169.    Defendant also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

170.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## PRAYER FOR RELIEF

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.  Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.  Awarding declaratory and other equitable relief as is necessary to protect the

interests of Plaintiff and the Class;

C.  Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.  Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Sensitive Information;

E.  Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.  Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.  Awarding attorneys' fees and costs, as allowed by law;

H.  Awarding prejudgment and post-judgment interest, as provided by law;

I.  Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.  Granting such other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiff hereby demands that this matter be tried before a jury.

Dated: March 31, 2025                                    Respectfully Submitted,

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins (CT29744)
**LEVI & KORSINSKY, LLP**
1111 Summer Street, Suite 403
Stamford, CT 06905
(203) 992-4523
(212) 363-7171 (facsimile)
shopkins@zlk.com

Samuel J. Strauss*
Raina Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
sam@straussborrelli.com
raina@straussborrelli.com

* *Pro hac vice forthcoming*

*Attorneys for Plaintiff and Proposed Class*